The next case is INRE BOROS v. BOROS, 2010-1092. It involves truck mixers, and Judge Wynn and I are accustomed to trading puns, and we agree that this case is susceptible to bargaining. It probably could be, right? You'll present a straight case to us. And Mr. Boros, back here, is very happy to be here today. He is one of the co-inventors on the application. Basically, this case gets into three different points. But first of all, I want to say where the commercial importance of the product is. This industry is being built on this very small pouch industry. I would like to think that someday it will become the crate of business. The crate mixes, in order to be effective, they have to be dry. They have to be substantially homogeneous. Also, it's very easy for somebody to mix, and that means you only add water. You ship a dry product. You give it to someone who may or may not be fluent in the English language, may or may not be above the age of 16, but this person can mix this product and cook it, and it will turn out reproducible every time. Look, when we look at claim one, it has flour component, edible oil, dried milk, dried egg, and the references disclose all of this. And you don't have to use a lot of references to find each of the components. So why isn't the patent office on the sound ground rejecting it for other reasons? Well, Humberland took the five references to find everything. Well, maybe they didn't need all five. Well, I believe that they did. First of all, there are issues. Isn't everything in McGinley with the excess of a leavening agent and a lack of oil? Well, let me check my note of McGinley here. Okay. Well, first of all, the product, my product does not have a leavening agent, and McGinley does have a leavening agent. And this is a case where they get some reference that teaches that already. Craig, you would not use a leavening agent. Yeah, there is a teaching. The difference between a pancake and a crepe basically is whether or not the product is leavened. Now, there was never any indication to have a leavened product in the application as filed. I've attempted to remove that with a consistent, essentially, oath language, which is one of the issues here today. A second issue is the patent office totally ignoring the 132 declaration of Mr. Boros for making a direct comparison of products. And the third is the failure of the patent office in any way to provide a 104 declaration when requested by counsel. I've been practicing for 37 years. Every time I have an examiner who puts up personal knowledge, I say, give me an affidavit on this. Tell me what your personal knowledge is. The examiners back off or they find another reference. In this case, the examiner obviously did not back off, but I can find no explanation in there as to why I should accept the patent office telling me what the product would be as far as the melting point of a term that's not a butter. To me, the issues on this are quite interesting. First of all, consisting, essentially, of sugar, soda, and that should dispose of most of the references because you can't find everything altogether in one place, and even the combinability of the products. You will find in there that they are adding liquids into the product in some of the references, and they're not treating the product as a product which stands alone as a dry butter homogeneous product  When it comes to the patent office as far as the affidavit evidence goes provided by Mr. Boros, the compositions are identical. It's actually a composition which is closer than what the patent office can come up with in the references. The only difference is in the melting point of the oil, and I would point out in here, I know I should not approach the court, excuse me, out here, but if you look at the joint appendix starting at page A140, the first four photographs are products made with an oil having a melting point below what is claimed in the claims. Isn't there a difficulty with the declaration and with respect to these tests because there's nothing in the declaration that sets forth what are the conditions, the conditions under which these respective batches were mixed, how they were cooked, how they were prepared, and in fact the patent office said this is not a part of the declaration because it doesn't tell us enough. Well, it is first of all a declaration and it is some evidence. Now, my point is, at what point, I asked the court, at what point does the patent office stop asking questions? They were just very dismissal of the affidavit, our declaration, but one of these products was not cooked at sea level and the other one at the top of Mount Everest, which might possibly make some difference. One of them was not cooked in an iron skillet and the other one in a teflon skillet. They were treated exactly identical except for one factor. Does the declaration say that? It effectively says that. Does it say that? One was within the scope of the claims, one was not, and the difference was the melting point of the oil that was used. Does it say that's the only difference? I'm just asking. I can't recall. I did state it in terms of being within the scope of the claims. No, but my point is, is that the only difference? Is that the only physical difference? The only difference being that one has an overall melting point of 137 and the other one doesn't. That would be correct. That's what it says? I believe that's what it says in the marriage assignment I looked at a few minutes ago. The point being, of course, this is probably the 34th time in 37 years that I've ever used A132 affidavit because I don't want to be incarcerated in a federal prison or accused of fraud. So it's a very last-ditch effort to point out that there is a difference in the product that can be obtained. And, again, I emphasize that when I did so, I made a better comparison than what the Patent Office could possibly put together. And I believe if you look at the five references or so that the Patent Office has, I wouldn't even hazard a guess as to what I should try to test out of these references because I know I wouldn't get the same problem, but I could change one ingredient and make a direct comparison. And with that, I had a product that would effectively be a product that's a very saleable product. Excuse me, the product is saleable anyway, but something that makes a direct comparison. We'll stay for the rest of your time if you wish, or we can continue. No, I think I'd better stop here. We've become good friends and we'll be back here again in a few weeks. Friends over the phone, anyway. Thank you, Your Honor. May it please the Court? As the Court said just a few moments ago, the references disclose all the elements of Claim 1. And I'd like to point out the case of our legion that the number of references are not dispositive, that you can have five references and still have an obvious misrejection. Everything is in McGinley. The Board found that it would have been obvious to remove the baking soda to convert a pancake mix to a crepe mix because this is exactly what Gislin teaches you. On A333, Gislin teaches that a crepe is an unleavened pancake. McGinley also, contrary to Boris' attorney's argument, teaches a dry culinary mix that all you have to do is add water in order to cook it. I'd like to respond to the arguments that the Board ignored the declaration. Well, can you also respond to, he didn't make much of it, it's in the briefs, it's about the examiner not properly doing an affidavit with respect to the knowledge that you relied on. I'm having a hard time looking at the regulation, recognizing how you draw the line between, I guess your answer was common sense, it wasn't something that was required in an affidavit. That's exactly right. How do you draw the line between what's personal knowledge required in an affidavit and what's common sense? Well, the examiner was not relying on her personal knowledge. Personal knowledge, I think within the meaning of the rule, means something that the examiner might personally know that is not known in the art. And here she was saying that it's well known in the art that clarified butter is a thicker, more purified form of butter, and it's solid at room temperature, and it would meet this melting point limitation of Boris' claims. She was saying this is something well known in the art, and she was taking official notice that clarified butter would meet this melting point limitation. And I'd like to point out that nowhere did Mr. Boris actually contest that fact. In his reply brief, he points to two places in the appendix, but I'd like to point out that the board actually did not consider those documents. The first document that he points to is an appeal brief that was filed on February 2, 2006. And if you look at the certified list on A44, you will see that after he filed that appeal brief, he received a notification of a noncompliant appeal brief. And this was on April 11, 2006. In response to that notification, he filed an entirely new appeal brief, and that was on August 6. In that August 16 appeal brief, he completely dropped his challenge to the examiners taking official notice. And the board found twice, once in the original decision, and this is at A26, and also in the rehearing decision, and this is at A4, they found that he did not challenge the examiners taking official notice that clarified butter would meet the melting point limitation, and he also didn't submit any type of evidence that would suggest that clarified butter doesn't meet this melting point limitation. So substantial evidence supports the board's finding that the applicant waived his ability to challenge the examiners taking official notice of the melting point limitation. And with respect to the declaration, again, the board did not ignore the declaration, and they reviewed it extensively in the original decision at A34 through 38, and also in the rehearing at A6 through 8. Basically, Boros made two crepes, one crepe that looked good and one crepe that looked bad. If it's not sufficient just to have good results, you also have to prove that those results would be unexpected with one skill in the art, and here he didn't do that. And the prior art actually teaches you or points you directly to using a clarified butter meeting its melting point limitation. Gislin teaches, again, clarified butter at A333. Callahan also teaches shortening, which would meet this melting point limitation. He teaches it in cake mixes. And as Judge Lynn was pointing out, the declaration actually doesn't even give you enough information, as the board found, to assess whether or not the difference in the good crepe and the bad crepe is actually the result of only this melting point limitation. Because, again, Boros did spell out what the ingredients were. He didn't tell you how they were made, how the crepes were cooked. And he never says, contrary to Boros' attorney's arguments, that the only difference is the melting point limitation. If you look at the deck at A134, he states that, for instance, in paragraph 13, that he made his crepe, his good crepe, according to claim one, by the method of claim 16. And then he states that he made Formulation A, that's the bad crepe, and this is in paragraph 15, again, by the method of claim 16, according to claim one, by the method of claim 16. But these claims would encompass a lot of variables. For instance, if you mix one crepe 100 times, the batter for one crepe 100 times, you can mix the batter for the other crepe 10 times. They could have been cooked in different types of pans, at different heat levels, in different circumstances, one on a humid day, one on a not-humid day. We don't know that from the declaration, right? Exactly. And the burden was on Boros to spell these things out. We're not on appeal, but we're now trying to figure out all these variables and what the result is. And all he had to do was to explain all these things to the examiner so that she could make an informed decision. He did not do that in this case. As to the remaining issues, I'd like to stand on and breathe. If there's no other questions, I will yield the rest of my time. Thank you, Ms. Seller. Mr. Collins, you have some rebuttal time. First of all, the affidavit of Mr. Boros stands on its merits. I can assure you that the tests were done completely by direct comparison. It may have been an oversight to not state that absolutely every condition was the same. But the affidavits are there, the physical evidence is there for the court to review. Secondly, if I understood the solicitor's office correctly, it was that the McGinley reference shows everything. And in the direct appendix of A325, the specific example of McGinley that was cited by the examiner, relied on by everyone, there's actually no other one there at all. It's Example 8. So, with that, I would rest unless the court has any additional questions. I would request a complete reversal, or at the very least, a revamp. And I can guarantee you butter will disappear from the claims. It's not practical anyway. Thank you, Mr. Collins. Attorney General, take another question. All right, thank you very much.